IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHINA NICOLE DALTON                                                                          PLAINTIFF

vs.                                                                    CIVIL ACTION NO. 1:16CV161-RP

COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff China Nicole Dalton, under 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security denying her applications for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act. Plaintiff protectively filed her application for a POD and DIB on February 8, 2013 alleging disability beginning November 17, 2012. Her claim was denied initially on June 3, 2013, and upon reconsideration on September 12, 2013. She filed a request for hearing and was represented by counsel at the hearing held on April 1, 2015. The Administrative Law Judge (ALJ) issued an unfavorable decision on May 21, 2015, and the Appeals Council denied plaintiff's request for a review on July 15, 2016. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Having considered the record, the briefs and the oral arguments of counsel, the court finds this case should be remanded to the Social Security Administration.

1

# I. FACTS

Plaintiff was born on November 8, 1973 and was 41 years old at the time of the hearing. She has a college education and previously worked as a secondary school teacher. Docket 8 at 32, 49. Plaintiff contends that she became disabled before her application for benefits due to "severe clinical depression, seizures, fatigue, anxiety, thyroid problems and metabolic syndrome." Docket 8 at 168.

The ALJ determined plaintiff suffered from "severe" impairments including an anxiety disorder and major depressive/affective disorder but found that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Docket 8 at 15-16. Based upon testimony by the vocational expert (VE) at the hearing and considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders or scaffolds, can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. She is limited to simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work). The claimant is limited to simple work-related decisions and is able to respond appropriately to co-workers, supervisors, and the public on an occasional basis. Finally, the claimant would be absent one day a month from work.

Docket 8 at 17. The ALJ then found plaintiff to be less than fully credible in that the intensity, persistence and limiting effects she claimed due to her symptoms were "not entirely credible and would not preclude light work as described above." *Id.* at 18. After evaluating all of the evidence in the record, including testimony of a VE, the ALJ held that plaintiff could perform jobs that exist in the national economy such as a sorter, a checker and a sampler. *Id.* at 19. As a

2

result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.* at 20.

Plaintiff contends the ALJ erred in formulating her Residual Functional Capacity ("RFC") and in failing to properly evaluate the opinion of Dr. Clyde Sheehan. Docket 11 at 1. Following a review of the briefs, the transcript and oral argument, the court agrees.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[1] *See* 20 C.F.R. §§ 404.1520 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence

---

[6] 20 C.F.R. §§ 404.1520(e) (2010).

[7] 20 C.F.R §§ 404.1520(g) (2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff's two assignments of error are based on the ALJ's failure to include in the RFC the limitations of Dr. Savell, the ALJ's own consultative examiner, and the opinion of her treating physician, Dr. Sheehan, resulting in a flawed RFC. The second assignment of error, that the ALJ did not perform the requisite analysis of Dr. Sheehan's opinion, is intertwined with the flawed RFC argument. As such, the court will address these arguments together.

At the request of the Commissioner, Dr. Savell examined plaintiff on two occasions, April 24, 2013 and January 24, 2015. Following his 2013 examination, Dr. Savell opined that plaintiff "would have difficulty dealing with the general public and dealing with routine stressors. She would have some difficulty with concentration and some difficulty with delayed recall. . . . Ms. Dalton's current prognosis appears to be poor. Over the next year, with continued mental health treatment, her prognosis is poor." Docket 8 at 399. In the subsequent examination, Dr. Savell opined that:

> [h]er primary problem in functioning in a vocational examination would have to do with her avoidance and high level of anxiety. She does have depression, but that comes and goes; although, she tends to have some depression at all times. I believe that she could

5

> probably function with her current level of depression. As mentioned above, the primary problem now would be the anxiety and ability to get out of the house and be around people. This woman could probably function in a job if she could work from her house. Her prognosis is rather poor for working outside of her home.

Docket 8 at 457. The ALJ considered the opinion of Dr. Savell and agreed that "claimant could function with her current level of depression and that the claimant had the capacity to understand and follow instructions and remember in order to function in a vocational environment." Docket 8 at 18. However, the ALJ disagreed with Dr. Savell's opinion that plaintiff could not work outside of the home due to her anxiety, finding this opinion "is internally inconsistent with the findings on Dr. Savell's (sic) and the fact the claimant related adequately with Dr. Savell and exhibited adequate communication skills." Docket 8 at 18. The ALJ did not assign any particular weight to the opinion of Dr. Savell.

Plaintiff's treating physician Dr. Sheehan opined that plaintiff suffers severe impairments in the ability to perform daily activities or work requiring frequent contact with others, as well as moderately severe impairments in her ability to relate to other people, comprehend instructions, perform simple tasks and repetitive tasks, and perform work with even minimal contact with others. Docket 8 at 478-80. Dr. Sheehan further opined that plaintiff would miss more than four days of work per month. *Id.* The ALJ afforded little weight to the opinion of Dr. Sheehan because, according to the ALJ, Dr. Sheehan's opinion is not supported by his exam notes. *Id.* at 18. The ALJ cites to Dr. Sheehan's exam notes from four (4) visits in 2013 and 2014 that indicate plaintiff was experiencing improved mood at those visits and had less anxiety on some visits. *Id.* However, Dr. Sheehan's notes also indicate that plaintiff's psychiatric status on August 28, 2013 was "abnormal" and that the severity of her anxiety necessitated an increase in

her medication. Docket 8 at 434-37. Dr. Sheehan's notes reflect numerous visits when he noted plaintiff's mood to be anxious, and there were numerous visits when plaintiff reported experiencing ongoing panic attacks, sometimes as often as two to three times per week. Docket 8 at 484, 486, 488, 490, 494, 496, 498, 502, 504.

Dr. Shearin, a thoracic surgeon, provided an opinion as to plaintiff's physical limitations after plaintiff was examined by D.D.S. Examiner Sammuell Bell. Docket 8 at 444-48. While the ALJ does briefly mention the opinion of Dr. Shearin, he does not indicate what, if any, weight was given to his opinion. Docket 8 at 15.

It appears that the ALJ relies most heavily upon the "DDS Assessment at Exhibit 1A" that is mentioned on two occasions in the ALJ's opinion. However, the ALJ failed to indicate what weight it was assigned or even the physician's name that completed the assessment. Docket 8 at 16-17. Dr. Amy Hudson completed the assessment on May 17, 2013, only three months after plaintiff filed her application for disability benefits. She did not examine plaintiff or have the benefit of the opinions by Dr. Sheehan and Dr. Savell. It is obvious that she did not understand the complexity of plaintiff's condition as her report states that "[h]er primary complaints are physical." Docket 8 at 62.

The law regarding treatment of an opinion from a treating source or treating physician is clear. Absent reliable medical evidence from a *treating or examining* specialist, an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(c)(2) (emphasis added). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under 20 C.F.R. § 404.1527(c)(2), the ALJ must evaluate a physician's opinion based on: (1) the physician's length of treatment of

7

the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 456; *see* 20 C.F.R. § 404.527(c)(2). The ALJ is required to perform a detailed analysis of the treating physician's opinion using these "*Newton* factors" only if there is no reliable medical evidence from another *treating or examining* physician that controverts the treating physician's opinion. *See Newton*, 209 F.3d at 445-47 (emphasis added); *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012).

In this case, the ALJ reviewed Dr. Sheehan's records and assigned his opinion little weight because he did not believe that Dr. Sheehan's opinion that plaintiff would likely miss more than four days of work per month was supported by his exam notes. Docket 8 at 18. However, the ALJ did not follow the criteria laid out in *Newton* or 20 C.F.R. § 404.1527(c). Instead, he considered Dr. Sheehan's opinion and discussed some of his records but ultimately made conclusory determinations that the doctor's opinion was not supported by the doctor's own medical records. Docket 8 at 18. He did not discuss the length of time Dr. Sheehan had treated plaintiff, the frequency of his exams of plaintiff, the nature and extent of the treatment relationship, or the fact that Dr. Sheehan is a board certified psychiatrist. All of those factors are relevant to the weight assigned to Dr. Sheehan's opinion. It is clear that the ALJ was required to perform an analysis of the *Newton* factors as the opinion of Dr. Savell, the only other physician that performed a psychological evaluation, is even more restrictive in that it concludes that plaintiff is unable to work outside the home due to her anxiety. Docket 8 at 457.

The ALJ did not apply the proper legal standards, and his decision is therefore not

substantially justified. In the absence of a contravening opinion by a treating or examining specialist, and in declining to give the plaintiff's treating physician controlling weight or even significant weight without performing the required analysis under *Newton*, the ALJ committed reversible error. *Newton*, 209 F.3d at 456.

The Fifth Circuit has held that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393(5th Cir. 2000). In this case, the ALJ's opinion offers no basis upon which to conclude that plaintiff's anxiety is not so severe as to limit her to work from home or to expect her to miss at least four days of work per month. The ALJ selectively reviewed the record and noted evidence that would support a denial of benefits. Reviewing the record as a whole, the undersigned concludes that the opinions of Dr. Savell and Dr. Sheehan are supported by the record and should have been given controlling weight. Because the RFC and hypothetical given to the vocational expert that elicited the opinion that plaintiff could perform three jobs in the national economy was not based upon the medical evidence of record, the court finds there is no substantial evidence supporting the hypothetical containing the ALJ's RFC, and a vocational expert's testimony based upon a defective hypothetical cannot itself constitute substantial evidence of a non-disability. *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). The court concludes the ALJ's decision is not supported by substantial evidence.

## IV. DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the claimant that

9

further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129. In this case, the record supports the hypothetical that the vocational expert testified would not permit the performance of the plaintiff's past relevant work or other jobs in the national economy. Considering the plaintiff's prospects of missing four days of work per month (Dr. Sheehan actually opined plaintiff would miss *more* than four days per month), the vocational expert testified that there would be no work in the national economy that plaintiff could perform. Docket 8 at 52. This diminishes – if not outright eliminates – the need for a remand for further consideration of the disability issue. Additionally, the plaintiff has been very patient. She has been seeking benefits through the administrative processes for over four years.[11] The court finds the evidence is conclusive that the plaintiff is disabled, and that an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare, and will avoid further undue delay which would result upon remand for additional review. The court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V. CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ is not supported by substantial evidence, that a substantial number of jobs do not exist in Mississippi or the national economy that plaintiff can perform due to her limitations, and that plaintiff is entitled to benefits under the Social Security Act. This case is remanded for the sole purpose of determining the amount of benefits to be awarded. A final judgment in accordance with this memorandum

---

[11] Plaintiff protectively filed her applications for benefits on February 8, 2013.

opinion will issue this day.

SO ORDERED, this, the 4th day of May, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE